

**IT IS HEREBY ADJUDGED and DECREED that the below described is SO ORDERED.**

**Dated: March 01, 2024.**

_____
**CRAIG A. GARGOTTA**
**CHIEF UNITED STATES BANKRUPTCY JUDGE**

---

## IN THE UNITED STATES BANKRUPTCY COURT

## FOR THE WESTERN DISTRICT OF TEXAS

## SAN ANTONIO DIVISION

| | | |
|---|---|---|
| IN RE: | § | CASE NO. 22-50591-CAG |
| | § | CASE NO. 22-50592-CAG |
| | § | (JOINTLY ADMINISTERED) |
| CHRIS PETTIT & ASSOCIATES, P.C. and | § | |
| CHRISTOPHER JOHN PETTIT | § | |
| | § | |
| Debtors. | § | CHAPTER 11 |

| | | |
|---|---|---|
| FRANK & EMMA PERSYN FAMILY | § | |
| LIMITED PARTNERSHIP | § | |
| | § | |
| Plaintiff, | § | |
| v. | § | ADV. NO. 22-05080-CAG |
| | § | |
| CHICAGO TITLE OF TEXAS LLC, | § | |
| | § | |
| Defendant. | § | |

### ORDER ON DEFENDANT'S MOTION FOR SUMMARY JUDGMENT (ECF NO. 62)

This is the Court's ruling on Defendant's Motion for Summary Judgment ("the Motion").

(ECF No. 62). This is a non-core proceeding under 28 U.S.C. § 157(c)(1). Both parties have

1

consented to the entry of a final order and final judgment by the Court pursuant to § 157(c)(2). (ECF Nos. 8–9). Venue is proper under § 1409(a). The Court finds that this matter is within its jurisdiction and authority pursuant to the Supreme Court's ruling in **In re Sharif**. 575 U.S. 665 (2015).

For the reasons stated herein, Defendant's Motion for Summary Judgment should be **DENIED**.

### BACKGROUND AND PARTIES' CONTENTIONS

In 2020, the Frank and Emma Persyn Family Limited Partnership ("Plaintiff") agreed to purchase 28.3 acres in San Antonio, Texas for $11,147,745.44. (ECF[1] No. 70, Ex. 9). Plaintiff stated that it hoped to invest the purchase price in qualifying transactions that would legally avoid tax consequences pursuant to 26 U.S.C § 1031 (a "1031 Exchange"). (ECF No. 1, Ex. B at 4). Plaintiff asked its attorney, Christopher John Pettit ("Debtor") and title agency, Chicago Title of Texas, LLC ("Defendant"), to further the 1031 Exchange. (ECF No. 1, Ex. B at 4). On October 26, 2020, Debtor sent a letter with his law firm's letterhead (bolded in large font stating "The Law Offices of Chris Pettit & Associates, A Professional Corporation") to Defendant's San Antonio office. The letter stated, "I am writing to confirm that our law firm represents the Persyn family in the above reference (sic) real estate transaction." (ECF No. 1, Ex. B at 12). Plaintiff instructed Defendant to wire the sale proceeds to Debtor's law firm's trust account. (ECF No. 3 at 7). Unusually, the sale listing did not state that the money was "for the benefit of [Plaintiff]" and the funds were to be deposited directly into Debtor's account. (ECF No. 1, Ex. B at 4).

---

[1] "ECF" denotes electronic case filing for the docket in this Adversary Proceeding.

Around November 16, 2020, Plaintiff and Defendant discussed Plaintiff's concern as to why the funds were not directly going to Plaintiff. (ECF No. 1, Ex. B at 4). Defendant allegedly assured Plaintiff that this was standard procedure. (ECF No. 1, Ex. B at 5). On November 18, 2020, Plaintiff and Defendant signed the Certificate of Reconfirmation of Seller's Representations and Warranties. (ECF No. 9, Ex. 9 at 15). Debtor closed the transaction and Defendant released the proceeds to Debtor. (ECF No. 1, Ex. B at 6).

On June 1, 2022, Debtor filed for chapter 11 bankruptcy in this Court. Since then, Debtor has faced numerous adversary proceedings and was recently sentenced to 50 years in prison for fraud by the United States District Court for the Western District of Texas. On December 17, 2022, Plaintiff filed suit against Defendant in Bexar County, Texas state court alleging negligence, negligent misrepresentation, and breach of fiduciary duty. (ECF No. 1, Ex. B at 9). Plaintiff then removed its action to this Court on November 22, 2022. (ECF No. 1).

There are four pleadings relevant to the Court's consideration: (1) Plaintiff's Petition[2] (ECF No. 1); (2) Defendant's Motion for Summary Judgment (ECF No. 62) ("the Motion"); (3) Plaintiff's Response to Defendant's Motion for Summary Judgment (ECF No. 70) ("the Response"); and, (4) Defendant's Reply in Support of its Motion for Summary Judgment (ECF No. 71) ("Defendant's Reply").

In its Petition, Plaintiff first argues that Defendant was negligent because Defendant did not carry out the contemplated 1031 Exchange "as a reasonable escrow agent would do under the same or similar circumstances, especially given the specific concerns voiced by the [Plaintiff's] Representative to the [Defendant's] Representative about whether the [funds] should be released

---

[2] Plaintiff did not file a conforming Complaint under the Federal Rules of Procedure, so the Court will use the convention of "Petition" in this Order.

to [Debtor]." (ECF No. 1, Ex. B at 8, ¶35). Plaintiff argues that Defendant breached its ordinary duty of care and proximately caused Plaintiff damages because Plaintiff was no longer able to use the tax savings and the sale proceeds. (ECF No. 1, Ex. B at 8). In Plaintiff's Response, Plaintiff further argues that Defendant breached its ordinary duty to follow its own brochure and 1031 exchange guidelines, fully disclose concerns regarding the normality of the transaction, and exercise a high degree of care to conserve Plaintiff's money and pay the proceeds to a QI who is entitled to receive the funds. (ECF No. 70 at 4).

In the Petition, Plaintiff also argues that Defendant negligently represented to Plaintiff that Debtor could serve as a qualified intermediary ("QI") as part of the 1031 Exchange and at minimum: knew or should have known that Debtor would be disqualified from doing so under IRS rules because the IRC prohibits attorneys from acting as a QI within a two-year period of representing a client. (ECF No. 1 at 4, ¶ 9). Plaintiff states that had Defendant properly informed Plaintiff, then Plaintiff "would have chosen a different [QI] other than [Debtor] . . . ." (ECF No. 1-2, Ex. B at 7). Plaintiff also argues that Defendant breached its fiduciary duties under Texas law to only pay a party that is entitled to receive the funds and breached its duty of disclosure (ECF No. 70 at 17).

In its Answer to the Notice of Removal (ECF No. 3), Defendant contends that it is not at fault because Plaintiff "was responsible for making its own investigation and/or consulting an attorney to determine the legal effect of the transaction at issue." (ECF No. 3 at 7). Defendant later filed its Motion, arguing that Defendant is entitled to judgment on Plaintiff's breach of fiduciary duty and negligence claims because "Plaintiff cannot prove a breach of any duty [that Defendant] had." (ECF No. 62 at 20).

Defendant also argues it should be granted summary judgment on Plaintiff's breach of fiduciary duty claim because it had "no knowledge that [Debtor] was a fraudster, so there was nothing to disclose for any 'duty to disclose.'" (ECF No. 62 at 21).

In sum, Defendant contends it should be granted summary judgment on Plaintiff's negligence, negligent misrepresentation, and fiduciary duty claims. (ECF No. 62).

The Court will first address the negligence claim. Defendant argues that it had no duty to Plaintiff to alert Plaintiff of Debtor's fraud. (ECF No. 62). Defendant argues in the alternative that if Defendant did have a duty, Defendant actually "fulfilled any actual duties by disbursing per [Plaintiff's] instructions" and "no dispute [exists because] Plaintiff wanted the transaction structured for a possible 1031 exchange with [Debtor's law firm] to receive [funds], as it had in prior transactions." (ECF No. 62 at 21). In Defendant's view, Defendant properly "disbursed Proceeds to Pettit Law, [Defendant] did so, and Pettit Law received them." (ECF No. 62 at 21). Thus, Defendant seeks granted judgment on this issue because "[c]losing agents do not review and ensure 1031 exchanges comply with tax laws." (ECF No. 62 at 21).

The Court will next address the negligent misrepresentation claim. Defendant argues that "Plaintiff relies on just two non-actionable communications" which are not "false representation of fact." (ECF No. 62 at 22–23). In Defendant's words, these statements were "(1) [Plaintiff's representative] discussed with [Defendant's representative] why [Debtor's law firm] was listed as seller on a draft seller's statement and (2) Defendant told Plaintiff that it needed to identify replacement property within a certain period." (ECF No. 62 at 23).

The Court will last address the fiduciary duty claim. Plaintiff argues that Defendant breached its fiduciary duty when its representative, senior commercial escrow agent Erica

Tomblin, failed to disclose to Plaintiff that usage of Debtor's tax identification number was "not customary" and "abnormal." In her deposition, Tomblin stated that she had "an obligation to say something to the parties involved in the transaction" upon seeing "something that is out of the ordinary or unusual." (ECF No. 70 at 4). Second, Plaintiff argues that Defendant breached its fiduciary duty of disclosure and ordinary duty of care by failing to copy Plaintiff in its communications. (ECF No. 70 at 5). Third, Plaintiff reiterates that Tomblin's lack of knowledge in company rules and basic 1031 exchange norms amount to a breach of duty to exercise an ordinary duty of care. In Tomblin's understanding, the qualified intermediary "either must be an attorney" or "a 1031 company." (ECF No. 70 at 7). Tomblin admitted that she was unaware, despite contrary indications otherwise, that attorneys cannot serve as QIs for their clients for two years after representing clients. (ECF No. 70 at 6–7). Tomblin also admitted that she knew that Debtor's firm represented Plaintiff in a legal capacity. (ECF No. 70 at 6–7).

## STANDARD OF REVIEW

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). Initially, the movant must demonstrate lack of evidence supporting the nonmovant's case. *Celotex*, 477 U.S. at 323. The burden then shifts to the nonmovant to present evidence that there is a genuine issue for trial. *Id.* at 324. A party cannot overcome summary judgment with "conclusory allegations, unsubstantiated assertions, or 'only a scintilla of evidence.'" *Davis v. Fort Bend Cnty.*, 765 F.3d 480, 484 (5th Cir. 2014) (quotation omitted). The Court must view all evidence in the light most favorable to the non-moving party. *Crawford v. Formosa Plastics Corp. La.*, 234 F.3d 899, 902

(5th Cir. 2000). If summary judgment is appropriate, the Court may resolve the case as a matter of law. *Celotex*, 477 U.S. at 323.

## LEGAL ANALYSIS

### I. Overview of an Escrow Agent's Duties Under Texas Law

In Texas, "an escrow agent is a third-party depositary of an escrow." ***Jaramillo Real Estate & Invs., LLC v. Sosa (In re Lopez)***, 2019 Bankr. LEXIS 2694, 2019 WL 3987748, at *3 (Bankr. S.D. Tex. Aug. 22, 2019). Escrow is "a document or other property held by the escrow agent until the occurrence of a specified event, at which time the agent makes disbursement or delivery in accordance with the parties' instructions." ***Id.*** Under Internal Revenue Code Section 1031, "[n]o gain or loss shall be recognized on the exchange of real property held for productive use in a trade or business or for investment if such real property is exchanged solely for real property of like kind which is to be held either for productive use in a trade or business or for investment." 26 U.S.C. § 1031(a)(1). This permits a "seller of real property [to] avoid capital gains tax by exchanging the sold property for a property of 'like-kind' within 180 days of the sale." ***Tukua Invs., LLC v. Spenst***, 413 S.W.3d 786, 792 n.2 (Tex. App.—El Paso 2013, pet. denied).

Texas courts are split regarding the scope of an escrow agent's duty to other parties in an escrow agreement. Most Texas courts have found that an escrow agent has "robust duties of loyalty, disclosure, and good faith independent of the terms of the escrow agreement."[3] In contrast, a minority of Texas courts view an escrow agent's duties as solely "limited to those set forth in the

---

[3] ***Corral Grp., LP v. SMIC, Ltd (In re SMIC, Ltd.)***, 2013 Bankr. LEXIS 3359, 2013 WL 4078704, at *11 (Bankr. N.D. Tex. Aug. 13, 2013) (*see e.g. Home Loan Corp. v. Tex. Am. Title Co.*, 191 S.W.3d 728, 731–33 (Tex. App.—Houston [14th Dist.] 2006, pet. denied); ***Bell v. Safeco Title Ins. Co.***, 830 S.W.2d 157, 161 (Tex. App.—Dallas 1992, writ denied) (citing ***Trevino v. Brookhill Capital Res., Inc.***, 782 S.W.2d 279, 281 (Tex. App.—Houston [1st Dist.] 1989, writ denied)); ***Zimmerman v. First Am. Title Ins. Co.***, 790 S.W.2d 690, 695 (Tex. App.—Tyler 1990, writ denied).

escrow agreement."[4] The United States District Court for the Western District of Texas adopts the majority view, stating that escrow agents have "the duty of loyalty, the duty to make full disclosure, and the duty to exercise a high degree of care to conserve the money and pay it only to those persons entitled to receive it." ***Bates Energy Oil & Gas v. Complete Oilfield Servs.***, 361 F. Supp. 3d 633, 659 (W.D. Tex. 2019). Texas state courts have interpreted "full disclosure" to require an escrow agent to disclose "all material facts known to the fiduciary that might affect the rights of the person to whom the duty is owed." ***Corral Grp., LP v. SMIC, Ltd (In re SMIC, Ltd.)***, 2013 Bankr. LEXIS 3359, 2013 WL 4078704, at *11 (Bankr. N.D. Tex. Aug. 13, 2013) (citing ***Home Loan Corp. v. Texas American Title Co.***, 191 S.W.3d 728, 732 (Tex. App.—Houston [14th Dist.] 2006, pet. denied)) (emphasis in original) (quoting ***City of Fort Worth v. Pippen***, 439 S.W.2d 660, 665 (Tex. 1969)).

Ultimately, an escrow agent is "obligated to do (and avoid doing) what a hypothetical escrow agent of ordinary prudence would do (or not do) under the same or similar circumstances." ***Id.*** An escrow agent must "act with utmost good faith and avoid any act of self-dealing that places his [or her] personal interest in conflict with his [or her] obligations to the beneficiaries [of the escrow agreement]." ***Id.***

While the majority view is broad, it is not all-encompassing. An escrow agent's duty does not extend to "investigat[ing] title or point[ing] out any outstanding encumbrances, and the nondisclosure of a title defect does not fall within the scope of an escrow agent's fiduciary obligations." ***In re Lopez***, 2019 WL 3987748, at *3. An escrow agent also does not have an "independent duty to determine the correctness of [documentation] provided by a title company."

---

[4] ***Id.*** (citing ***Jones v. Blume***, 196 S.W.3d 440, 448 (Tex. App.—Dallas 2006, pet. denied) (citing ***Equisource Realty Corp. v. Crown Life Ins. Co.***, 854 S.W.2d 691, 697 (Tex. App.—Dallas 1993, no writ)); ***Chapman Children's Trust v. Porter & Hedges LLP***, 32 S.W.3d 429, 438 (Tex. App.—Houston [14th Dist.] 2000, pet. denied).

*Shoalmire v. U.S. Title of Harrison Cnty.*, 2010 Tex. App. LEXIS 421, 2010 WL 271302, at *5 (Tex. App.—Texarkana 2010, no pet.) (quoting *Holder–McDonald v. Chicago Title Ins. Co.*, 188 S.W.3d 244, 248 (Tex. App.—Dallas 2006, pet. denied)). An escrow agent's duties encompass "matters affecting the parties' rights in the closing process" but do not extend to the "merits of the underlying transaction." *Bell v. Safeco Title Ins. Co.*, 830 S.W.2d, 157, 161 (Tex. App.—Dallas 1992, writ denied) (citing *Vector Indus., Inc. v. Dupre*, 793 S.W.2d 97, 101 (Tex. App.—Dallas 1990, no writ)).

The Court will now analyze the parties' contentions with this overview in consideration.

## II.     Negligence Claim

Under Texas common law, "a negligence cause of action consists of: (1) a legal duty owed by one person to another; (2) a breach of that duty; and (3) damages proximately resulting from the breach." *Reyes v. Dollar Tree Stores, Inc.*, 221 F. Supp. 3d 817 (W.D. Tex. 2016) (citing *Firestone Steel Products Co. v. Barajas*, 927 S.W.2d 608 (Tex. 1996)); *W. Investments, Inc. v. Urena*, 162 S.W.3d 547 (Tex. 2005)).

### A.  Duty

To address the first element, the Court must determine whether Defendant owed Plaintiff a legal duty. "The existence of a duty is a question of law." *Nabors Drilling, U.S.A., Inc. v. Escoto*, 288 S.W.3d 401, 404 (Tex. 2009).

Plaintiff argues in its Petition that Defendant owed a duty to Plaintiff to "carry out the contemplated 1013 Exchange as a reasonable escrow agent would do under the same or similar circumstances." (ECF No. 1, Ex. B at 8). Plaintiff reiterates in its Response that an "escrow agent is obligated to do (and avoid doing) what a hypothetical escrow agent of ordinary prudence would

do (or not do) under the same or similar circumstance)." (ECF No. 70 at 16). Throughout its Response, Plaintiff articulates two main duties that an ordinarily prudent escrow agent has: (1) follow internal rules and guidelines, and (2) stay reasonably educated on internal rules and guidelines. (*See generally* ECF No. 70).

In contrast, Defendant contends that it is entitled to summary judgment on Plaintiff's negligence claim because "Plaintiff cannot prove breach of any ordinary duty for negligence." (ECF No. 62 at 21). Defendant claims that as an escrow agent, it owed no legal duty to (1) disclose that Debtor was disqualified under tax law to serve as a QI, or (2) ensure proceeds were paid to a QI entitled to receive them. (ECF No. 62 at 18). Defendant argues that Plaintiff is asking this Court to run counter to the "well-established" rule that there is "no duty" for an escrow agent to "explain a transaction's risks or terms or provide legal advice" or "counsel" because "Texas prohibits the unlicensed practice of law." (ECF No. 62 at 19). Defendant cites to numerous cases in the context of a Ponzi scheme, in which escrow agents were not found liable for negligence for failing to disclose facts that would have prevented the plaintiff from being defrauded. (ECF No. 62 at 19) (citing ***Victory v. Sneed Fin. Services, LLC***, 2010 U.S. Dist. LEXIS 1098, 2010 WL 45919, at *6 (N.D. Tex. Jan. 6, 2010)). The ***Sneed*** court explained that there are no "extraordinary" duties to an escrow agreement, such as a "duty to investigate the circumstances of the principals' business dealings." ***Id.*** at 6. Defendant argues that it "had no duty to evaluate and advise Plaintiff on the transaction including Debtor's law firm's qualification under complex tax law to be the QI." (ECF No. 62 at 20).

The Court disagrees with Defendant's characterization of Plaintiff's argument surrounding duty. Plaintiff is not arguing that Defendant had the extraordinary duty to give hyper-sophisticated analysis to Plaintiff on complex issues of tax law. The Court agrees with Plaintiff that there is an

ordinary duty of reasonable care for escrow agents to follow: (1) they must follow the Buyer's and Seller's Instructions and (2) they must maintain basic knowledge surrounding their own company's internal guidelines and rules. The Court finds that Plaintiff has (1) alleged that Defendant failed to properly train its staff and (2) alleged Defendant breached an overall duty of reasonable care to follow Plaintiff's instructions and Defendant's own internal guidance surrounding QIs. The parties have presented differing accounts of what they believe is proper QI procedure and knowledge levels for escrow agent employees. Accordingly, whether Defendant failed to properly train its employees is appropriate resolution for the trier of fact. Thus, the Court finds a genuine issue of material fact as to this element.

### B. Breach

Regarding the second element of negligence, Plaintiff supports its theory of breach with the following: Plaintiff notes that Defendant's representative failed to "copy [Plaintiff's] representative on her communications" despite seeing unusual issues in the transaction, such as the usage of Debtor's tax identification number in the transaction instead of Plaintiff's. (ECF No. 70 at 4). In her deposition, Steubing admitted that "as an escrow agent . . . in these types of real estate transactions . . . if you see something that is out of the ordinary or unusual . . . you have an obligation to say something to the parties involved in the transaction." (ECF No. 70 at 4). Plaintiff further contends that Defendant breached its ordinary duty of care as an escrow agent by not knowing basic QI rules. (ECF No. 70 at 7). Plaintiff also explains that Debtor could not have served as a QI because he had served as Plaintiff's attorney within the last two years, and that Defendant should have been aware of this rule because it is stated on Defendant's own website and brochure. (ECF No. 70 at 7). Plaintiff attaches Defendant's brochure, which states "Qualified Intermediary Requirements – Must use QI who is neutral party not advising client in last 2 years." (ECF No. 70

at 7). Steubing also admitted in her deposition that she had never heard of the two-year rule prior to this lawsuit. (ECF No. 70 at 6). Lastly, Plaintiff shows that Defendant also "did not close according to the Buyer's Instructions by releasing the Funds to someone other than the 'Seller,' which was a defined term in the Buyer's Instructions." (ECF No. 70 at 9).

In contrast, Defendant contends that it did not breach its duty because Defendant properly structured the 1031 Exchange with Debtor's firm to receive funds (ECF No. 62 at 70). Defendant also contends that the closing agent is not responsible for reviewing and ensuring that the 1031 exchange complies with requisite tax laws. (ECF No. 62 at 70). Defendant contends it acted "as a reasonable and prudent closing agent and properly closed and disbursed Proceeds." (ECF No. 62 at 21). According to Defendant, summary judgment should be granted because "it is proper to identify QIs on closing documents, there are different ways to do so, the identification has no tax significance, and [Defendant's] practice was correct." (ECF No. 62 at 21). In Defendant's view, "there is no dispute that Plaintiff instructed Chicago Title to disburse Proceeds to Pettit Law, [Defendant] did so, and Pettit Law received them" and thus, Defendant "fulfilled any duties by disbursing per instructions." (ECF No. 62 at 21).

As discussed above, Plaintiff argues that Defendant breached its duty of ordinary care by failing to educate its employees. Plaintiff argues that had Defendant properly educated its employee, then that employee would have copied Plaintiff on emails and alerted Plaintiff that Debtor was not a QI under its internal rules and guidelines. Defendant's main argument addressing breach is that Plaintiff cannot prove breach because Defendant had no duty. In the alternative, Defendant argues that if it did in fact have a duty, then its actions were in line with what other reasonably prudent escrow agents would have done.

Under Texas law, reasonable care only contemplates "foreseeable" risks, meaning "dangers that a 'person of ordinary intelligence . . . should have anticipated' in light of [the] negligent action." ***Dollar Tree***, 221 F. Supp. 3d at 826. The parties cannot agree as to whether Defendant's failure to copy Plaintiff on emails and not alert Plaintiff to Debtor's QI status was a breach of ordinary care for escrow agents. The Court will evaluate at trial whether Defendant breached its duty to properly train its employees because is a fact issue for the Court to decide. The Court finds that there is a genuine issue of material fact as to the element of breach.

### C. Causation: Damages Proximately Resulted from the Breach

Defendant argues that Plaintiff is asking this Court to run counter to "well-established" rules that there is "no duty" for an escrow agent to "explain a transaction's risks or terms or provide legal advice" nor is there any duty to "counsel" because "Texas prohibits the unlicensed practice of law." (ECF No. 62 at 19). Defendant cites to numerous cases in the context of a Ponzi scheme, in which escrow agents were now found liable for negligence in Texas for not disclosing facts that would have prevented the plaintiff from being defrauded. *See **Victory v. Sneed Fin. Services, LLC***, 2010 WL 45919, at *6 (N.D. Tex. Jan. 6, 2010). The ***Victory*** court explained there are no "extraordinary" duties to an escrow agreement, such as a "duty to investigate the circumstances of the principals' business dealings." ***Id.*** at 6. Defendant argues that it "had no duty to evaluate and advise Plaintiff on the transaction including Pettit Law's qualification under complex tax law to be the QI." (ECF No. 62 at 20). But that is not what Plaintiff is alleging here. Plaintiff is articulating that had Defendant's representatives followed their own internal guidelines and rules, Defendant would have alerted Plaintiff to the irregularity of the transaction and not released escrow funds to a party who was not entitled to receive the funds. The Court does not agree that Plaintiff is alleging

that Defendant, as a reasonable escrow agent, should have given hyper-sophisticated analysis to Plaintiff on complex issues of tax law.

Turning to the third element, Plaintiff argues that Defendant proximately caused Plaintiff damages "in the form of the loss of the use and enjoyment of the Proceeds, and any possible loss of the tax savings of the contemplated 1031 Exchange." (ECF No. 1, Ex. B at 8). Plaintiff argues that Defendant's "failure to foresee the hazards . . . and adequately train" its escrow agents to ensure that the closing of 1031 exchanges were done correctly is the proximate cause of Plaintiff's financial injury. (ECF No. 70 at 20). Plaintiff contends that because hazards such as wire fraud are prevalent, Defendant "adopted precautionary measures over time to avoid such losses, or lessen such losses." (ECF No. 70 at 20).

Defendant counters that Debtor's "criminal misconduct would be the sole proximate cause or a superseding cause breaking any causal chain." (ECF No. 62 at 24). In Defendant's Reply, Defendant also argues that Debtor's criminal conduct was not foreseeable (ECF No. 71 at 14). According to Defendant's underwriting counsel at the time, Doug Becker, Defendant adopted these safety measures because it acknowledges wire fraud and its "foreseeability that there are fraudsters and other criminal actors in the world . . . ." (ECF No. 70-21, Ex. EX DB at 10; ECF No. 70 at 20).

"Proximate cause has two elements: cause in fact and foreseeability." ***Dollar Tree***, 221 F. Supp. 3d at 832 (citing ***Urena***, 162 S.W.3d at 551). Texas courts view proximate cause as a fact issue but it may be considered an issue of law when the facts are conclusive. ***Minnesota Mining & Mfg. Co. v. Atterbury***, 978 S.W.2d 183, 197 (Tex. App.—Texarkana 1998, pet. denied)

Turning to the first element of causation, the Court finds that Plaintiff established a genuine issue of material fact as to whether Defendant caused in part Plaintiff's financial injury. The parties disagree as to whether Debtor is the superseding cause or whether Defendant's failure to follow the Buyer/Seller Instructions and its own rules ultimately caused the injury. Defendant argues an absence of causation and asserts the affirmative defense that Debtor is the superseding cause.

According to the Fifth Circuit, now that Defendant has pointed to an affirmative defense, "the burden shifts to [Plaintiff] to offer some evidence that raises a genuine dispute." *Poincon v. Offshore Marine Contractors, Inc.*, 9 F.4th 289, 298 (5th Cir. 2021) (citing *In re La. Crawfish Producers*, 852 F.3d 456, 462 (5th Cir. 2017)).

The Court finds that Plaintiff has demonstrated a genuine dispute as to material fact because Plaintiff's evidence, if true, would allow this Court as the finder of fact to conclude that Defendant caused Plaintiff's injury. Plaintiff argues that Defendant should have been on alert that Debtor could commit fraud. Plaintiff also notes that Tomblin admitted that she failed to ask why there was no exchange agreement in Plaintiff's file, why "Seller" was not uniform throughout the Buyer's Settlement Statement, and why Debtor's TIN was used in Plaintiff's TIN. (ECF No. 70 at 10–11). Conversely, Defendant argues it had "no reason to suspect" that Debtor would steal the funds because his crimes only became public knowledge in 2022. (ECF No. 62 at 17). Defendant offers deposition statements from Plaintiff's own representatives affirming they had no "inkling," "red flags," or "concerns" about Debtor committing fraud. (ECF No. 62 at 17).

Because there is a genuine dispute here, Defendant is not entitled to judgment as a matter of law on its affirmative defense.

Turning to foreseeability, the Texas Supreme Court has found that foreseeability analysis under the duty element is the same as the foreseeability analysis for the proximate cause element. *Id.* Thus, Texas courts assessing proximate cause to determine if an injury was foreseeable may "simply refer[] to its previous discussion of foreseeability under 'duty' rather than "repeat its analysis [of foreseeability] verbatim." *Id.* (citing ***Mellon Mortg. Co. v. Holder***, 5 S.W.3d 654, 659 (Tex. 1999)). Here, this Court finds there is a genuine issue of material fact as to foreseeability. Therefore, the Court need not repeat its analysis here. Instead, the Court finds that Plaintiff provided sufficient summary judgment evidence to rebut Defendant's affirmative defense for this count and that Defendant failed to demonstrate that Plaintiff cannot prove proximate cause as a matter of law.

### III.    Negligent Misrepresentation Claim

Texas courts have adopted the test for negligent misrepresentation set forth in Restatement (Second) of Torts § 552. ***Hagans v. Woodruff***, 830 S.W.2d 732, 735–36 (Tex. App.—Houston [14th Dist.] 1992, no writ). "A party alleging negligent misrepresentation must prove that (1) a representation [wa]s made by a defendant in the course of [its] business or in a transaction in which [it] has a pecuniary interest; (2) the defendant provide[d] 'false information' for the guidance of others in [its] business; (3) the defendant did not exercise reasonable care or competence in obtaining or communicating the information; and (4) the plaintiff suffer[ed] pecuniary loss by justifiably relying on the representation." ***In re SMIC***, 2013 Bankr. LEXIS 3359, at *18–19; ***GE Capital Corp v. Posey***, 415 F.3d 395–96 (5th Cir. 2005).

### A.   A Representation Was Made

Regarding the first element, Plaintiff argues that a genuine issue of material fact issue exists

concerning a conversation between Plaintiff's representative, Lorraine Steubing, and Defendant's representative, Erica Tomblin. (ECF No. 62 at 13). In her deposition, Plaintiff's representative stated that Defendant's representative improperly gave her legal advice on the morning of the closing after Plaintiff expressed hesitation about the transaction. (ECF No. 70 at 2).[5] Plaintiff believes Defendant incorrectly informed Plaintiff that Debtor's signing as QI was the "legal way to do this or [Plaintiff] would have to pay capital gains now." (ECF No 70. At 3). Plaintiff argues that Defendant told Plaintiff that they "usually do it through a lawyer or there are companies that handle 1031 exchanges." (ECF No. 70 at 3). There are six varieties of a statement that Plaintiff alleges:

> (1) "We've done quite a few of these and this is standard procedure," or,
>
> (2) "If you want to do this as a 1031 exchange, it has to be done this way," or,
>
> (3) "If you want this to be done as a 1031, it has to go in the lawyer's name or a 1031 exchange company," or,
>
> (4) "Well, this is the way it is done. This is the legal way to do it otherwise you will have to pay taxes on it," or,
>
> (5) "The closing statement needed to reflect funds were going to Pettit Law as QI," or,
>
> (6) "Because this is a 1031, it has to go into his account in order for you to do a 1031. It could not go in your name. That is why he is the seller."

(ECF No. 62 at 13).

Plaintiff further contends that "it would not have closed the transaction with Debtor" if Defendant had not relayed that the transaction "had to be done" in "this way." (ECF No. 70 at 19).

---

[5] Later, Plaintiff memorialized this conversation in an email to her family members, stating "I am sending this for your review. It is setup to go into Chris Pettit's account with Frost Bank and he will give us the account number. They changed procedures since last time, Chris has to sign as intermediary and use his tax ID number for the 1031 exchange. I called the title company and talked to Erica and she said this is the legal way to do this or we would have to pay capital gains now. She said they usually do it through a lawyer or there are companies that handle 1031 exchanges." (ECF No. 62-25, Ex. 24 at 2).

In contrast, Defendant's representative did "not recall the conversation" at all because "[i]t's been a long time" and her statement would not be "standard operating procedure," so was unlikely to have occurred. (ECF No. 70 at 2–3, Ex. ET 236:10–237:7). Tomblin doubted any of Plaintiff's alleged variations because such "legal advice" is "not accurate," and she is "absolutely" not authorized to give such advice." (ECF No. 70 at 2–3, Ex. ET 236:10–237:7). Defendant's representative further casts doubt on the alleged statements because she believes that it is not in her nature to "give that information just off the cuff." (ECF No. 70 at 3).

The Court finds that there is a genuine issue of material fact surrounding whether a statement was made and what inference the statement could have reasonably relayed. Plaintiff points to evidence, including deposition testimony, showing that Defendant made affirmative representations to Plaintiff regarding the 1031 Exchange and Pettit's role in the exchange. (ECF No. 70 at 2). Plaintiff also produced evidence indicating that Steubing sent an email to her family members summarizing a telephone conversation with Tomblin. (ECF No. 62-25, Ex. 24 at 2). In contrast, Defendant questions whether the statement occurred. Thus, the Court will assess this claim at trial.

### B. Defendant Provided False Information in the Guidance of Business

Regarding the second element, Plaintiff argues that these statements were false, which is admitted by Defendant's representative in her deposition as "not accurate." (ECF No. 70 at 19). In opposition, Defendant notes that even if those statements were said, the statements are not false and are "consistent with common practices for closing 1031 exchanges." (ECF No. 62 at 23). Defendant contends that it is true that "in a 1031 exchange, sale proceeds are disbursed to a QI for the seller to avoid immediate payment of capital gains" and it is true that "if Plaintiff instructed [Defendant] to transfer the Proceeds to [Debtor], taxes would have to be paid." (ECF No. 23).

There is, again, a genuine issue of material fact. Both parties place different emphases in different places of the statements alleged. In Plaintiff's view, Steubing believed Tomblin said that "*Chris* (Debtor) has to sign as intermediary and use *his* tax ID number for the 1031 exchange … she said this is the legal way to do this." (ECF No. 70 at 3). Plaintiff argues that they viewed this statement as "*i.e.* 'that the closing has to be done with Chris Pettit listed as the seller.'" (ECF No. 71 at 13). Plaintiff further supports this theory by explaining that this conversation occurred in the context of their concern regarding Debtor's name and TIN number being used in lieu of Plaintiff's.

Defendant understands this conversation differently. Defendant argues that the conversation, if it occurred at all, was Defendant explaining in broad strokes that "there are *lawyers* and companies that 'handle' 1031 exchanges as qualified intermediaries" which is "patently true." (ECF No. 62 at 23–24). Further, Defendant states that the conversation consisted of its representative explaining that a QI is "commonly identified with the seller in multiple ways on closing documents," which is "appropriate." (ECF No. 62 at 23).

The Court finds there is a genuine issue of material fact as to this element. As the factfinder, the Court will assess witness credibility to determine where the emphasis in the statements was placed and what could have been reasonably inferred from the statements, assuming a statement occurred in the first place.

### C. Defendant Did Not Exercise Reasonable Care in its Statement

Regarding the third element, Plaintiff argues that the above-referenced statements amount to a failure to exercise reasonable care because the statements were "falsely made for the Family's Guidance" considering, as Tomblin admitted in her deposition, such advice would not be "accurate." (ECF No. 70 at 19). Defendant argues the opposite: that Plaintiff fails to show that

Defendant failed to exercise reasonable care because the statements were "true." (ECF No. 62 at 24). Defendant's representative argues that if she had made such a statement, "she would not have been exercising reasonable care because such would be 'outside the scope of her duties.'" For the same reason stated above, the Court finds a genuine issue of material fact as to this element.

### D. Plaintiff Relied on Defendant's Statement and Suffered a Pecuniary Loss

As to the fourth element, Plaintiff states that it justifiably relied on Defendant's misstatement and suffered "a pecuniary loss given that it would not have closed the transaction with [Debtor] if Steubing had not been told by Tomblin that this was the way that 'it had to be done.'" (ECF No. 1-2, Ex. B. at 8); (ECF No. 70 at 19). Defendant counters that this was Plaintiff's third 1031 exchange with Debtor's law firm. (ECF No. 71 at 13). Defendant also argues that Plaintiff relied on Debtor's false statements instead." (ECF No. 62 at 24). Additionally, Defendant questions whether Plaintiff suffered a pecuniary loss, calling it a "bare assertion." (ECF No. 71 at 13).

Ultimately, the alleged conversation between Steubing and Tomblin presents an issue of material fact for the Court to interpret. Summary judgment is denied on the negligent misrepresentation claim for the reasons stated above.

### IV. Breach of Fiduciary Duty Claim

To establish a breach of fiduciary duty, Plaintiff must demonstrate: "(1) a fiduciary relationship between the plaintiff and defendant; (2) the defendant must have breached his fiduciary duty to the plaintiff; and (3) the defendant's breach must result in injury to the plaintiff or benefit to the defendant." *In re SMIC*, 2013 WL 4078704, at *10.

### A. Fiduciary Relationship Exists

Regarding the first element, Texas law has a broad view of fiduciary relationships, which can be both informal and formal. ***Olmos v. David B. Giles P.C.***, 2022 U.S. Dist. LEXIS 77134, 2022 WL 1289556, at *3 (N.D. Tex. Apr. 28, 2022).[6] Texas law views the "escrow relationship" as a "stakeholder relationship that carries special duties, including those of a fiduciary nature." ***Id.*** (citing ***Trahan v. Lone Star Title Co. of El Paso, Inc.***, 247 S.W.3d 269, 287 (Tex. App.—El Paso 2007, pet. denied)). Even if there is no formal escrow agreement, the Texas Supreme Court nonetheless imposes fiduciary duties on a party "when the circumstances strongly resemble an escrow arrangement." ***Id.*** (citing ***Pippen***, 439 S.W.2d at 664–65) (holding that an agent who took money from a principal for a specific purpose ultimately owed that principal fiduciary obligations of loyalty, full disclosure, and a high degree of care). Even though the terms of the escrow agreement are unknown and have not been attached as summary judgment evidence,[7] it is undisputed that Plaintiff and Defendant were in an escrow arrangement with the expectation that Defendant would hold Plaintiff's funds for the purpose of a 1031 Exchange and would distribute the funds to Plaintiff's designated QI. Thus, the Court finds this element is satisfied.

### B. Breach of Fiduciary Duty

Regarding the second element, a Texas escrow agent owes three main fiduciary duties: "loyalty," "full disclosure," and a "high degree of care to conserve the money and pay only those entitled to receive it." ***Neukranz v. Conestoga Settlement Servs., LLC***, 2022 U.S. Dist. LEXIS

---

[6] ***Jones v. Blume***, 196 S.W.3d 440, 447–49 (Tex. App.—Dallas 2006, pet. denied) (explaining that an informal fiduciary relationship arises when "one person trusts in and relies upon another, whether the relationship is a moral, social, domestic, or purely personal one" whereas a formal fiduciary relationship exists "as a matter of law in certain formal relationships, including attorney-client and trustee relationships").

[7] The Court notes that the parties attached a Seller's Settlement Statement and a Buyer's Settlement Statement. In Texas, a Settlement Agreement is a Rule 11 agreement and thus, can be enforceable as an escrow agreement contract. The parties did not raise this issue in any of the documents before this Court.

240167, 2022 WL 19518465, at *15 (N.D. Tex. Nov. 14, 2022) (citing ***Flagstar Bank, FSB v. Walker***, 451 S.W.3d 490, 499 (Tex. App.—Dallas 2014, no pet.)). The parties do not contest the fiduciary duty of loyalty but disagree as to the extent of the remaining fiduciary duties for an escrow agent under Texas law. In summary, the parties' contentions surrounding these two duties are as follows.

In its Petition, Plaintiff asserts that Defendant breached its fiduciary duty to Plaintiff because it failed to conserve the funds, pay a party entitled to receive the funds, and fully disclose that Debtor could not serve as a QI due to his law office representing Plaintiff within the last two years. (ECF No. 1, Ex. B at 9). Later, in its Response, Plaintiff points to the IPX brochure on Defendant's website and contained in Defendant's "1031 Guidelines," which state that a QI must be a "neutral party not advising the client in the last 2 years." (ECF No. 70 at 7). In its Petition, Plaintiff argues that Defendant's failure to fully disclose that Debtor could not serve as the QI resulted in Plaintiff losing the financial benefits of a 1031 Exchange and facing tax liability. (ECF No. 1, Ex. B at 7).

In its Motion, Defendant counters that Plaintiff "cannot prove a breach of any actual duty [Defendant] had" because Defendant had "no knowledge that [Debtor] was a fraudster." (ECF No. 62 at 21). Thus, there was no "duty to disclose." (ECF No. 62 at 21). Defendant contends that Plaintiff cannot prove that Defendant owed it fiduciary duties. (ECF No. 62 at 18). Defendant states that Plaintiff "incorrectly contends" that Defendant had a "duty to disclose" that Debtor's law firm was disqualified under tax law to serve as a QI and to "ensure [the funds] were paid to persons entitled to receive them" because this improperly amounts to "review[ing] and ensur[ing] 1031 exchanges comply with tax laws" which "closing agent do not review." (ECF No. 62 at 21).

Moreover, Defendant argues that Texas law is "well established and clear" that Defendant need not "counsel Plaintiff on the merits and legal consequences of its transaction." (ECF No. 62 at 21).

The crux of the parties' disagreement boils down to the following differing interpretations: (1) what "entitled to receive the funds" means and (2) how the fiduciary duty of "disclosure" interacts with the duty to "pay only those entitled to receive" the funds.

From Plaintiff's perspective, "entitled to receive the funds" is a three-step process. Plaintiff first selects a party to receive the funds. Then, Defendant evaluates whether that party is a proper QI, upon review of its internal guidelines and industry norms. Finally, if those standards are satisfied, Defendant releases the funds. Plaintiff views the fiduciary duty of full disclosure broadly and argues that this duty overlaps with "pay only those entitled to receive the funds" as one in the same. Under Defendant's view, "entitled to receive the funds" solely means that Plaintiff first selects a QI, and then Defendant wires the funds to that QI. Whether "entitled to receive the funds" is a three-fold process, as Plaintiff alleges, or a two-step process, as Defendant alleges, has not yet been addressed in Texas.

This Court is not inclined to adopt Defendant's position. Within the structure of a 1031 exchange, it is well established in Texas that an escrow agent "carries special duties." *Bell*, 830 S.W.2d at 161 (quoting *Wilson v. Carver Fed. Sav. & Loan Ass'n*, 774 S.W.2d 106, 107 (Tex. App.—Beaumont 1989, no writ)). "The purpose of requiring a grantor to place funds or property in escrow is to protect the promise by having a neutral third party hold the item until the performance of a condition or the happening of a certain event, and then the escrow agent delivers the item to the grantee." *Id.* (quoting *Vector Indus., Inc. v. Dupre*, 793 S.W.2d 97, 101 (Tex. App.—Dallas 1990, no writ). If this Court found that escrow agents are permitted to blindly hand funds to Plaintiff's designated party, then the Court would set the precedent that title companies

would have no need for 1031 guidelines internally. Defendant's position also risks reading in an exception that runs counter to the purpose of a 1031 exchange: furthering a tax benefit.

As such, the Court adopts Plaintiff's three-step interpretation of an escrow agent's duty. The Court's interpretation of "entitled to receive the funds" is also in line with other Texas courts' broad interpretation of the fiduciary duty of disclosure. Texas state courts read fiduciary duties of escrow agents broadly and have not "directly addressed any limitation on the scope of an escrow or other settlement agent's fiduciary duty of disclosure." *Home Loan Corp.*, 191 S.W.3d at 733. This is because "fiduciary duties arise as a matter of law, not contract" and "exist in special relationships in which a high degree of trust warrants that the fiduciary's conduct be measured by higher standards than ordinary contractual dealings between parties and that those standards [are not] 'whittled down by exceptions.'" *Id.*

Furthermore, Defendant is incorrect regarding Plaintiff's contentions and the applicability of its cited cases to this Court. In its Petition, Plaintiff alleges that Defendant breached its fiduciary duty by (1) failing to fully disclose that Debtor could not serve as a proper QI and (2) failing to distribute the funds to a QI who could properly receive the funds. Plaintiff is not alleging that Defendant failed to properly investigate the title for encumbrances or failed to properly assess the title company's documentation. Rather, Plaintiff's allegations fall squarely within Texas courts' view of what an escrow agent is required to do. Plaintiff alleges that (1) Debtor was not a party entitled to receive the funds under law and Plaintiff provides ample summary judgment evidence, (2) that demonstrates Defendant received notice that Debtor's firm was operating as QI, and (3) failed to ensure a qualified person entitled to receive the 1031 funds ultimately received the funds.

In its Motion, Defendant cites generally to *Holder-McDonald v. Chicago Title Ins. Co.*, 188 S.W.3d 244 (Tex. App.—Dallas 2006, pet. denied), *Shoalmire v. U.S. Title of Harrison Cnty.*,

2010 Tex. App. LEXIS 421, 2010 WL 271302 (Tex. App.—Texarkana Jan. 26, 2010, no pet.), ***IQ Holdings, Inc. v. Stewart Title Guar. Co.***, 451 S.W.3d 861 (Tex. App.—Houston [1st Dist.] 2014, no pet.), and ***Jaramillo Real Estate & Invs., LLC v. Sosa (In re Lopez)***, 2019 Bankr. LEXIS 2694, 2019 WL 3987748 (Bankr. S.D. Tex. Aug. 22, 2019) to demonstrate that escrow agents do not need to investigate, determine a transaction's correctness, provide legal advice, or point out title defects. This is an accurate statement of the law in Texas, but these cases once again fail to address Plaintiff's contentions. Plaintiff is not arguing that Defendant should have investigated Debtor for fraud and disclosed his scheming ways but is arguing that (1) Defendant should have evaluated, pursuant to their own internal requirements that Debtor was not a QI and then inform Plaintiff of this determination and (2) been on alert that fraud could have occurred when the transaction appeared abnormal at numerous junctures.

In sum, the Court adopts Plaintiff's three-step interpretation of Defendant's fiduciary duty because the Court sees little reason to read an exception into Texas law that runs counter to furthering the provision's purpose. Thus, the Court finds a genuine issue of material fact as to this element.

### C.  Defendant's Breach Resulted in Financial Injury to Plaintiff

In its Petition, Plaintiff states that it suffered damages because of Defendant's actions. (ECF No. 1, Ex. B at 9). This element appears not to be in dispute. Neither party separately addresses in their pleadings injuries apart from the financial injury discussed in the above sections. Thus,

summary judgment is denied as to the breach of fiduciary duty claim.

## CONCLUSION

For the foregoing reasons, it is ORDERED that Defendant's Motion for Summary Judgment (ECF No. 62) is **DENIED**.