

**IT IS HEREBY ADJUDGED and DECREED that the below described is SO ORDERED.**

**Dated: April 25, 2024.**

_____
**CRAIG A. GARGOTTA
CHIEF UNITED STATES BANKRUPTCY JUDGE**

_____

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE WESTERN DISTRICT OF TEXAS
## SAN ANTONIO DIVISION

| | | |
|---|---|---|
| IN RE: | § | CASE NO. 22-50591-CAG |
| | § | CASE NO. 22-50592-CAG |
| | § | (JOINTLY ADMINISTERED) |
| CHRIS PETTIT & ASSOCIATES, P.C. and | § | |
| CHRISTOPHER JOHN PETTIT | § | |
| | § | |
| Debtors. | § | CHAPTER 11 |

_____

| | | |
|---|---|---|
| FRANK & EMMA PERSYN FAMILY | § | |
| LIMITED PARTNERSHIP | § | |
| | § | |
| Plaintiff, | § | |
| v. | § | ADV. NO. 22-05080-CAG |
| | § | |
| CHICAGO TITLE OF TEXAS LLC, | § | |
| | § | |
| Defendant. | § | |

**ORDER REGARDING MOTION TO RECONSIDER (ECF NO. 85) AND CLARIFYING THE COURT'S ORDER DENYING SUMMARY JUDGMENT**

Before the Court is Chicago Title of Texas LLC's ("Defendant") Motion for

Reconsideration of Order on Defendant's Motion for Summary Judgment [ECF No. 85]. The Court having considered Defendant's motion, finds that the motion is meritorious on two points of contention: (1) the Court did not sufficiently address proximate cause; and (2) erred in its analysis of burden-shifting under **Phan Son Van v. Pena**, 990 S.W.2d 751 (Tex. 1999). The Court will reexamine proximate cause and the **Pena** standard, in turn, below.

A. **Legal Standard of Summary Judgment**

Summary judgment is intended to "dispose of factually unsupported claims or defenses." **Cardner v. Home Depot U.S.A., Inc.**, 561 F. Supp. 2d 640, 643 (E.D. Tex. 2006) (citing **Celotex Corp. v. Catrett**, 477 U.S. 317, 327 (1986)). Rule 56(c) states that summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." **Celotex**, 477 U.S. at 322. A genuine dispute of material fact means that "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." **Anderson v. Liberty Lobby, Inc.**, 477 U.S. 242, 248 (1986). The trial court is ultimately charged with resolving all reasonable doubts in favor of the party opposing the motion for summary judgment. **Casey Enters., Inc. v. American Hardware Mut. Ins. Co.**, 655 F.2d 598, 602 (5th Cir. 1981) (citations omitted).

The burden is on the movant to show that they are entitled to judgment as a matter of law. **Liberty Lobby**, 477 U.S. at 247. The substantive law shows which facts are to be considered material. **Casey**, 655 F.2d at 248. Federal Rule of Civil Procedure 56(e) "requires the nonmoving party to go beyond the pleadings and by her own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' [and] designate 'specific facts showing that there is a genuine issue for trial.'" **Celotex**, 477 U.S. at 324. The movant must bring forth evidence that

2

establishes "beyond peradventure *all* of the essential elements of the claim or defense." ***Fontenot v. Upjohn Co.***, 780 F.2d 1190, 1194 (5th Cir. 1986). "The nonmovant must adduce affirmative evidence." ***Cardner v. Home Depot U.S.A. Inc.***, 561 F. Supp.2d 640, 643 (E.D. Tex. 2006) (citing ***Liberty Lobby***, 477 U.S. at 257).

B. **Parties' Contentions**

As the Court previously stated in its Order Denying Defendant's Request for Summary Judgment [ECF No. 85], Defendant argues either that Christopher Pettit ("Debtor") is the sole cause of the Perysn Family's ("Plaintiff") alleged loss, or in the alternative, that Debtor's theft is a superseding cause. [ECF No. 85 at 14]. In its Motion to Reconsider, Defendant argues that it is entitled to summary judgment as a matter of law on proximate cause, because "Plaintiff failed to produce evidence from which a reasonable fact finder could find proximate causation . . . ." [ECF No. 92 at 7].

Defendant also argues that Plaintiff can only avoid summary judgment under ***Pena*** by "presenting evidence that, despite the 'extraordinary' and 'abnormal' nature of the [criminal's] intervening force, there was some indication at the time of [Defendant's alleged misconduct] that such a crime would be committed." (emphasis removed) [ECF No. 92 at 7]. Defendant directs the Court to consider how "Plaintiff's Managers all admitted that Mr. Pettit's post-closing theft from Pettit Law was unforeseeable" and examine the fact that "Defendant's escrow officer and closer both testified that that [sic] they had no information or knowledge that Mr. Pettit would steal Plaintiff's sale proceeds from Pettit Law." [ECF No. 92 at 9].

In essence, Defendant views ***Pena*** as a subjective test that requires this Court to inquire whether, at the time Debtor committed theft, Defendant and Plaintiff were subjectively clued into

3

the possibility that Debtor could commit a crime of such magnitude. Defendant argues that the analysis should be as follows: (1) Defendant satisfied its burden by pointing the Court to subjective evidence that Plaintiff's representatives did not think they would be defrauded by Debtor, then (2) the burden shifted to Plaintiff, and (3) Plaintiff failed to carry its burden, (4) thus, Defendant prevailed on all claims at summary judgment.

In its earlier pleadings, Plaintiff's allegations involve the interplay between the allegedly negligent training of Defendant's employees and the failure to screen Debtor as a qualified intermediary ("QI"). In its Reply to Defendant's Motion to Reconsider, Plaintiff argues that its case is "factually intensive" and that Defendant's cited cases are not on point because many of Defendant's cases "followed a trial on the merits as opposed to summary judgment disposition." [ECF No. 96 at 6]. Plaintiff also argues that Defendant is incorrect in its interpretation of **Pena**, arguing that the case "does not help [Defendant's] case, but actually hurts it." [ECF No. 96 at 6]. In Plaintiff's view, **Pena** articulates that the burden shifting is triggered by a showing that the "criminal harm was different from that which would otherwise have resulted from the negligent conduct." [ECF No. 96 at 6]. Plaintiff argues that the Court should not have reached the burden shifting analysis because Defendant did not satisfy its burden, but if the Court were to shift the burden, "the Order's result still stands given that [Plaintiff] has presented controverted evidence that the criminal conduct was foreseeable." [ECF No. 96 at 7–8]. Although Defendant's Motion to Reconsider is largely focused on **Pena**, the Court finds it prudent to first address whether proximate cause is satisfied for summary judgment before addressing Defendant's affirmative defense argument.

### C. Proximate Cause

Under Texas law, a negligence claim "requires the claimant to show that damages were proximately caused by a breach of a duty." ***Johnson v. Walker***, No. 09-22-00255, 2023 WL 2182299, at *3 (Tex. App.—Beaumont Feb. 23, 2023, no pet.). Proximate cause is bifurcated into (1) cause in fact and (2) foreseeability. ***Id.*** (citing ***Del Lago Partners, Inc. v. Smith***, 307 S.W.3d 762, 774 (Tex. 2010)).

"Cause in fact is 'but for cause,' meaning the negligent act or omission was a substantial factor in bringing about the injury and without which no harm would have been incurred." ***Gutierrez v. Excel Corp.***, 106 F.3d 683, 687 (5th Cir. 1997) (citing ***El Chico Corp. v. Poole***, 732 S.W.2d 306, 313 (Tex. 1987)). "Cause in fact is not shown if the defendant's negligence did no more than furnish a condition which made the injury possible." ***Doe v. Boys Clubs of Greater Dallas, Inc.***, 907 S.W.2d 472, 477 (Tex. 1995). Texas courts have explained that "furnishing a condition" means that the "evidence must go further, and show that such negligence was the proximate, and not the remote, cause of resulting injuries…. [and] justify the conclusion that such injury was the natural and probable result thereof." ***Doe v. Boys Clubs of Greater Dallas, Inc.***, 907 S.W.2d 472, 477 (Tex. 1995) (quoting ***Boyd v. Fuel Distribs., Inc.***, 795 S.W.2d 266, 272 (Tex. App.—Austin 1990, writ denied)).

5

Several Texas cases have illustrated the principle of "furnishing a condition" in the contexts of premises liability,[1] vehicular collisions,[2] gun violence[3] and sexual assault.[4] While the aforementioned cases are not perfectly factually analogous, the way that Texas courts have approached premises liability, collisions, guns, and assault fact patterns is nonetheless instructive.

For example, in ***Doe v. Boys Clubs of Greater Dallas, Inc.***, 907 S.W.2d 472, 477 (Tex. 1995), the Texas Supreme Court analyzed a failure to screen negligence action related to a volunteer. In this case, grandparents sued a youth club alleging it failed to appropriately screen a volunteer who sexually abused their grandchildren. *Id.* The Supreme Court of Texas held that if the club had breached its duty to screen volunteers, the breach was not the cause-in-fact of the grandparents' injury because "revelation of the two misdemeanor DWI convictions would not have precluded [the abuser's] presence at the Club" and "there is no evidence that the [youth club] would not have taken [the abuser] as a volunteer if it had known he had been convicted for driving while intoxicated." *Id.* at 477–78.

In a second example, ***McDorman ex rel. Connelly v. Tex.-Cola Leasing Co. LP, LLP***, 288

---

[1] ***Bean v. Wal-Mart Stores, Inc.***, No. 4:07-CV-3201, 2008 WL 8082761 (S.D. Tex. Dec. 8, 2008) (denying summary judgment in a consumer's premises liability action against a store stemming from an accident in which a child's finger was crushed in a store's restroom door); ***Cardner v. Home Depot U.S.A., Inc.***, 561 F. Supp. 2d 640 (E.D. Tex. 2006) (holding that genuine issues of material fact preclude summary judgment in a premises liability case when cinder blocks in a Home Depot fell on a customer); ***Plainview Motels, Inc. v. Reynolds***, 127 S.W.3d 21 (Tex. App.—Tyler 2003, pet. denied) (addressing a premises liability cause of action against a store for injuries sustained when a mirror stack falls on to a customer and the customer's child); ***W. Investments, Inc. v. Urena***, 162 S.W.3d 547 (Tex. 2005) (holding that landlord's alleged breach of duty in failing to obtain police reports of calls related to criminal activity in the area was not proximate cause of sexual assault because there was no evidence that the sexual assault could have been prevented if defendant had done the three things plaintiff claimed it should have done).

[2] ***Moore Freight Servs., Inc. v. Munoz***, 545 S.W.3d 85 (Tex. App.—El Paso 2017, pet. denied) (holding that a truck owner's failure to supervise its manager who engaged in unauthorized acts did not cause the accident that resulted in the deaths of the truck driver and accident); ***Lear Siegler, Inc. v. Perez***, 819 S.W.2d 470 (Tex. 1991) (holding that an alleged defect in a highway arrow sign was too remote to be the proximate cause of a highway department worker's death when a motorist, who would not have seen the sign even if it was functioning, fell asleep and struck the sign which struck and kills the worker); ***Connaway v. Vill. Farms, L.P.***, 200 S.W.3d 353 (Tex. App.—Dallas 2006, no pet.) (holding that a farm operator's creating of a large dust cloud on the roadway that obscured visibility was not the proximate cause of an accident between a motorcyclist and another vehicle).

[3] ***Ambrosio v. Carter's Shooting Ctr., Inc.***, 20 S.W.3d 262 (Tex. App.—Houston [14th Dist.] 2000, pet. denied) (holding that a gun store's alleged failure to exercise care in storing and displaying its guns was too attenuated from a

F. Supp. 2d 796 (N.D. Tex. 2003), a Texas federal district court assessed a failure to screen an employee. In this case, the estate of a deceased mother and her severely injured son alleged that a trucking company was negligent in hiring a driver with a criminal background related to domestic violence and marijuana possession. *Id.* at 799. The plaintiffs alleged that because of the driver's failure to stop at a construction site, a chain reaction followed that pushed one vehicle into the next until the mother's truck was crushed, resulting in her death. *Id.* The Court assessed whether "sufficient testimony exist[ed] that indicat[ed] if [the driver's] background had been properly discovered, he would not or should not have been hired." *Id.* at 805. The court explained that there must be a "nexus between the harm that occurred" and the company "policy in place." *Id.* Ultimately, the prior domestic violence and marijuana convictions were found to lack the nexus to the accident because "such information did not indicate reckless or unsafe driving habits." *Id.*

While Debtor was not an employee, or a volunteer, the analysis provided in these "failure to screen" styled actions provide the Court with a rule. This Court must inquire: based on the summary judgment evidence, assuming Defendant had screened Debtor, would revelation of the screening's results have precluded Debtor's presence or participation as a QI, *or* did Defendant's participation here merely furnish the condition for Debtor's fraud.

At the summary judgment stage, the Court notes that there is conflicting testimony surrounding whether Debtor would have been precluded from serving as a QI even if Defendant had properly screened. Both parties recognize that there is a two-year rule precluding attorneys

---

murder committed with a gun stolen from the store to constitute the legal cause of injury); ***Jojo's Restaurants, Inc. v. McFadden***, 117 S.W.3d 279 (Tex. App.—Amarillo 2003, pet. denied), judgment modified on reh'g (Aug. 7, 2003) (holding that a restaurant patron failed to establish that a restaurant's failure to have security in its parking lot during the "bar rush" was the proximate cause of her injuries after a motorist fired his shotgun at patrons in the parking lot).
[4] ***Doe v. Boys Clubs of Greater Dallas, Inc.***, 907 S.W.2d 472 (Tex. 1995) (affirming that boys club's failure to screen volunteers was not the cause in fact of sexual assault injuries to two grandchildren because an investigation of the volunteer's criminal record would have revealed two misdemeanor driving while intoxicated convictions which would not have precluded the volunteer's presence at the club).

7

who have represented clients within the last two years to serve as a QI, but the parties also disagree as to whether an exception applies that would have permitted Debtor to serve as a QI. Thus, it is unclear to the Court whether, assuming Defendant had investigated Debtor's ability to serve as QI, revelation of Debtor's history would have precluded his role in the transaction. As further explained below, the parties apply the Texas Supreme Court's holding in *Doe* with different conclusions.

Plaintiff posits that had Defendant properly screened Debtor, then Debtor would have been categorically barred from receiving the funds under the two-year rule. In contrast, Defendant provides an alternative result through its expert, arguing that even if Defendant had properly screened Debtor, Debtor still could have served as a QI under an exception to the two-year rule. [ECF No. 62, Ex. 37 at 35] ("The limited-services exception to the qualified intermediary safe harbor allows an attorney to be a qualified intermediary.") Under this theory, Defendant would have merely furnished the condition for Debtor to commit fraud. The Court finds that whether Debtor could have served as a QI is a genuine issue of material fact. The Court will need to assess at trial through evidence presented by both[5] parties' experts whether Defendant screening Debtor (1) would have precluded Debtor's presence (thus preventing wire fraud), or (2) whether it would not have changed the result (Debtor could have been a QI nonetheless).

Turning to the second prong of proximate cause, "[f]oreseeability requires only that (1) the

---

[5] Because this is essentially a professional malpractice case, the Court must follow the rule that the "standard of care and the breach of the standard are established by expert testimony." **Ling v. BDA&K Bus. Services, Inc.**, 261 S.W.3d 341, 348 (Tex. App.—Dallas 2008, no pet.). As explained by the Texas Supreme Court, "[e]xpert testimony is necessary when the alleged negligence is of such a nature as not to be within the experience of a layman." **Greater San Antonio Transp. Co. v. Polito**, No. 04-10-00330-CV, 2011 WL 2893080, at *3 (Tex. App.—San Antonio July 20, 2011, pet. denied) (quoting **FFE Transp. Services, Inc. v. Fulgham**, 154 S.W.3d 84, 90 (Tex. 2004)). "In determining whether expert testimony is necessary to establish negligence, Texas courts have considered whether the conduct at issue involves the use of specialized equipment and techniques unfamiliar to the ordinary person." *Id.* Nuances surrounding whether a QI is satisfactory in the title industry is a technical process unfamiliar to an ordinary layperson.

injury be of such a general character as might reasonably have been anticipated, and (2) the injured party be so similarly situated in relation to the wrongful act that the injury to [him] or to someone similarly situated might reasonably have been foreseen." *Plainview Motels, Inc. v. Reynolds*, 127 S.W.3d 21, 33 (Tex. App.—Tyler 2003, pet. denied). In evaluating these prongs, the Court must assess whether "a person of ordinary intelligence should have anticipated the dangers that his negligence created." *McDorman*, 288 F.Supp.2d at 804. The Court must make a "practical inquiry based on 'common experience applied to human conduct.'" *Cardner v. Home Depot U.S.A., Inc.*, 561 F. Supp. 2d 640, 645 (E.D. Tex. 2006).

The Fifth Circuit previously analyzed foreseeability under Texas law in *Downey v. Denton County, Tex.*, 119 F.3d 381, 388–89 (5th Cir. 1997) and emphasized that a defendant's failure to act upon "unusual" circumstances outside of customary norms is relevant to foreseeability analysis. In *Downey*, a prison guard left his duty post to visit a women's unit to have a tear in his uniform pants mended by a female inmate. *Id.* at 388. Despite a second guard's concern that it was not customary for inmates to mend guard uniforms, the second guard permitted the inmate to be alone with the first guard for almost two hours without monitoring and the inmate was sexually assaulted. *Id.* The Fifth Circuit held that the district court was correct in finding that the second guard was negligent for allowing the first guard to be alone with an inmate without supervision in light of noting that the first guard's request to remove the inmate was "unusual" because that mending task was "ordinarily reserved" for non-inmates. *Id.* at 398.

Balancing the Fifth Circuit's wholistic *Downey* analysis with the Texas Supreme Court's mandate in *Ling* that expert testimony must establish the industry standard, the Court must inquire whether there are sufficiently plead surrounding facts "unusual" enough that Defendant's employees, observing industry standards, should have anticipated wire fraud. Upon review, the

9

parties present conflicting evidence on the applicable industry standard and whether Defendant's representatives breached their duty. For clarity, the Court outlines below what each party believes the applicable industry standard to be and whether a breach of that industry standard occurred.

Plaintiff points the Court to Defendant's own internal guidance and Defendant's representatives' deposition statements to argue the industry standard for an escrow agent.[6] Plaintiff points to Defendant's representatives' testimony admitting (1) that using Debtor's tax identification number ("TIN")[7] was "not customary" and "not what [she's] used to seeing" [ECF No. 70 at 4] and (2) that the funds were to be released to the "Seller" (Plaintiff), which had four different definitions, but instead the funds were released to Debtor. [ECF No. 70 at 9]. Plaintiff further argues that Defendant's representatives should have been alerted to a problem because there was no written exchange agreement in the file for the seller's side of the transaction. [ECF No. 70 at 10]. Plaintiff also notes that Defendant's representative admits to not asking why there was no exchange agreement in Plaintiff's file, and that the exchange document the representative received "was different" from the standard exchange document that the representative was accustomed to seeing. [ECF No. 70 at 11]. Plaintiff argues that Defendant's failure to assess these red flags[8] for

---

[6] To reiterate, Plaintiff previously alleged that Defendant failed to sufficiently train its employees to screen QIs and as a result, failed to properly screen Debtor as QI. Plaintiff argues that there is "ample record evidence of the inadequate training the [Defendant] providing to both Tomblin and Becker despite its parent company, Fidelity, fully owning IPX 1031, a 1031 exchange company that made 1031 training materials available to [Defendant] employees via trainings and [Defendant's] internet." [ECF No. 96 at 12]. Plaintiff points to Defendant's representatives "testif[ying] that it was not until [Plaintiff's] case was filed that they even heard about the Two-Year Rule." [ECF No. 96 at 12]. In its Reply to Defendant's Motion for Summary Judgment [ECF No. 70], Plaintiff argued that Defendant could have foreseen Debtor's criminal conduct because there were a variety of "abnormal" flags related to this transaction.
[7] In Plaintiff's Reply to Defendant's Motion for Summary Judgment [ECF No. 70], Plaintiff reattaches highlighted testimony from Defendant's representatives in which the experts agree that when escrow agents review closing documents, typically use the TIN of the seller, not the IPX 1031's taxpayer ID, as Debtor was doing. [ECF No. 70, Ex. EX ET (Erica Tomblin Depo Excerpts) at 52]. Plaintiff further highlights testimony in which Tomblin agrees that, normally, the TIN would be the seller's, which would be Plaintiff's, as opposed to Debtor. [ECF No. 70, Ex. EX ET (Erica Tomblin Depo Excerpts) at 54].
[8] In its Response to Defendant's Motion to Reconsider [ECF No. 96 at 7], Plaintiff also argues that it is "foreseeable that an escrow officer releasing funds to anyone other than the actual seller of a property could result in the loss of those funds."

wire fraud was "beyond careless" and "a departure from what a reasonably prudent escrow agent would do . . . ." [ECF No. 70 at 19].

In opposition, Defendant points the Court to two affidavits from tax experts to show what the industry standard is for escrow agents. Defendant uses its experts to contest the statements from its own representatives of what should be considered "abnormal" verses appropriate in a 1031 transaction.[9] In its Reply in Support of its Motion for Summary Judgment [ECF No. 71 at 9], Defendant countered that Plaintiff's TIN number was used, not Debtor's. Defendant explains that TIN numbers are solely related to post-closing reporting—not disbursing—and that the TIN is irrelevant to placing any party on notice of any potential issue surrounding a transaction. [ECF No. 71 at 9]. In its Motion for Summary Judgment [ECF No. 62], Defendant's expert states that a seller being listed on a settlement statement has no tax significance. [ECF No. 62, Ex. 37 at 33]. According to its expert, it is common industry practice for parties to identify a QI as the recipient of exchange proceeds in a settlement statement. [ECF No. 62, Ex. 37 at 33]. As further noted below, Defendant provided expert reports from Bradley T. Borden, a tax professor, and Kent M. Hanszen, an attorney who operates a title agency and former escrow officer. [ECF No. 62, Ex. 37–38].

Mr. Borden states that in his opinion, Plaintiff's loss "resulted from the conversion of funds held by [Debtor's firm]" and that the "information available to [Defendant] before or at closing did not suggest that [Debtor's firm] could not act as qualified intermediary for [Plaintiff]." [ECF No. 62, Ex. 37 at 9]. Borden believes that "information that has become available after the closing

---

[9] Defendant previously argued that Plaintiff "failed to show that 'such a crime'—[Debtor's] post-closing intentional theft from Pettit Law—was foreseeable at the time of closing" and that "such a downstream, post-closing, intentional theft of proceeds from a QI's or any law firm's bank account by an employee—whether the theft is one day, several months, or even years after closing—is simply not the foreseeable result of any alleged breach of any escrow's duty or any alleged negligent misrepresentation." [ECF No. 92 at 8].

11

indicates that [Plaintiff] could not have qualified for section 1031 nonrecognition and there was therefore no valid tax [benefit] . . . ." [ECF No. 62, Ex. 37 at 9]. Borden also notes that "identifying the qualified intermediary as the seller on a closing statement is common practice" and so is identifying the qualified intermediary as the recipient of exchange proceeds. [ECF No. 62, Ex. 37 at 33]. Borden also posits that Debtor's representation falls within the "limited-services exception" to the definition of a disqualified person and thus, Debtor was permitted to serve as QI. [ECF No. 62, Ex. 37 at 38–39]. Mr. Hanszen opined that "the law does not provide for a negligence claim against a title agency under the circumstances presented" and "Chicago is simply not responsible for the heinous actions of the FLP's attorney."[10] [ECF No. 62, Ex. 38 at 6]. This expert further gives a litany of cases discussing how the closing agency does not "owe a legal duty to the insured party to provide it with title coverage beyond the scope of the written policy or to disclose risks that the policy did not cover." [ECF No. 62, Ex. 38 at 6].

Here, there is a genuine issue of material fact concerning foreseeability. The parties offer plausible, differing characterizations of professional "red flags" in the title industry and whether Defendant's representatives should have foreseen wire fraud. Establishing the standard of care through expert testimony at trial will allow the Court to assess what the industry standard is and whether a breach occurred. For example, the Court will need to assess whether Defendant's failure to screen Debtor out as a QI, failure to notice the TIN number was Debtor's, and the failure to notice Debtor's name on the seller's documents actually amounted to a breach of the standard of reasonable care typically observed by an escrow agent in the title industry.

---

[10] In his proffered view, Defendant "properly closed the subject transaction," "acted as a reasonable and prudent closing agent in closing same," "properly disbursed the sale proceeds in accordance with the FLP's express written instructions as evidenced by the signatures of the general partner and all limited partners of the FLP," and "did not owe a duty to Frank & Emma Persyn Family Limited Partnership to disclose anything…." [ECF No. 62, Ex. 38 at 5].

As an additional note, Defendant's experts note that in their professional opinions, there is no duty for Defendant to alert Plaintiff that Debtor could not operate as a QI. That is not dispositive such that Defendant should be awarded summary judgment. Defendant's experts are only relevant to the extent that they can provide the industry standard to the Court—not to formulate legal conclusions. The Court is ultimately charged with the role of interpreting the law.

### D. Superseding Cause and *Pena* Burden Shifting

Superseding cause "destroys the causal connection, if any, between the act or omission inquired about and the occurrence in question." ***Columbia Rio Grande Healthcare, L.P. v. Hawley***, 284 S.W.3d 851, 856 (Tex. 2009). Superseding cause may nonetheless "'intervene between the original wrong and the final injury such that the injury is attributed to the new cause rather than the first and more remote cause.'" *Id.* (quoting ***Dew v. Crown Derrick Erectors, Inc.***, 208 S.W.3d 448, 450 (Tex. 2006) (plurality op.)). The Texas Supreme Court in ***Pena***[11] looked to Section 442 of the *Restatement (Second) of Torts* to explain how courts "allocate the summary judgment burden on the foreseeability analysis." Section 442 articulates the following factors to determine "whether an intervening force rises to the level of a superseding cause":

> (a) the fact that the intervening force brings about harm *different in kind from that which would otherwise have resulted from the actor's negligence*;
>
> (b) the fact that *the intervening force's operation or the consequences* thereof appear after the event to be *extraordinary* rather than normal in view of the circumstances existing at the time of the force's operation;
>
> (c) the fact that *the intervening force is operating independently of any situation created by the actor's negligence*, or, on the other hand, is or is not a normal result of such a situation;

---

[11] In ***Pena***, the Texas Supreme Court found that a dram shop owner's summary judgment proof conclusively established that the gang members' intentional criminal acts were a superseding cause because the "harm inflicted by the gang members was different in kind from that generally contemplated by the duty not to furnish alcoholic beverages to minors. It is foreseeable, for example, that the sale of alcohol to a minor will result in the minor driving while intoxicated and either causing injury or being injured." 990 S.W.2d at 755.

(d) the fact that the operation of the intervening force is due to a third person's act or to his failure to act;

(e) the fact that the intervening force is due to an act of a third person which is wrongful toward the other and as such subjects the third person to liability to him;

(f) the degree of culpability of a wrongful act of a third person which sets the intervening force in motion.

*Pena*, 990 S.W.2d at 754.

The *Pena* court stated that "a defendant who seeks to negate foreseeability on summary judgment must prove more than that the intervening third-party criminal conduct occurred." *Id.* "The defendant has the burden to prove that the conduct was not foreseeable" by "present[ing] evidence that the plaintiff's injuries resulted from intervening criminal conduct . . . *based on considerations like those in Section 442 . . . ." Id.* (emphasis added). Only once this burden is satisfied has the defendant negated the ordinary foreseeability element of proximate cause, then the burden "shifts to the plaintiff to raise a fact issue by presenting controverting evidence that the criminal conduct was foreseeable." *Id.* To illustrate, in *Pena*, the dram shop owner provided extensive summary judgment evidence by arguing that the gang members' brutal murder and sexual assault of two teenage girls who happened upon a gang initiation far away and later in time after the gang purchased alcohol was not harm "of the type generally contemplated by the duty not to furnish alcohol to minors." *Id.* The owner also demonstrated that the tortfeasors' harm was "extraordinary in nature" through turning the Court's attention to the heightened level of violence and the ferocity of the girls' injury. *Id.* The court, in its analysis, acknowledged prior witness testimony in the criminal trial that after the fight, "the gang members were 'hyper and drunk,' 'worked up,' and 'out of control. *Id.* at 753.[12]

---

[12] As stated by the *Pena* court, "the harm inflicted by the gang members was different in kind from that generally contemplated by the duty not to furnish alcoholic beverages to minors. It is foreseeable, for example, that the sale of alcohol to a minor will result in the minor driving while intoxicated and either causing injury or being injured. On the

14

To properly establish its affirmative defense, Defendant must show that Debtor's criminal acts were not reasonably foreseeable through applying the Section 442 factors. For example, Defendant could use its experts to specifically assess subsection (a) and argue that Defendant's duty to follow the Buyer's and Seller's instructions and maintain basic knowledge surrounding its own internal rules and guidelines against wire fraud could result not in wire fraud in this particular fact pattern. Or, Defendant could apply subsection (c), and argue that Debtor's wire fraud was not a typical wire fraud scheme expected for falling short in maintaining 1031 Exchange guidelines, and instead was a hyper-sophisticated, extraordinary fraud case that went far beyond the norm. As explained below, this Court now assesses whether Defendant sufficiently pled the Section 442 factors in its prior motions to conclusively establish as a matter of law that Debtor's theft of the funds is a superseding cause. *Id.*

Defendant previously explained in its Motion to Reconsider that it previously offered "(1) that the escrow proceeds were disbursed according to instructions to [Debtor and Debtor's firm], (2) that after the closing the proceeds were stolen by [Debtor], (3) [Debtor] admitted he took the money, and (4) that he plead guilty." [ECF No. 92 at 13]. Defendant states that this conclusively establishes that "a third party had engaged in extraordinary, independent, highly culpable, wrongful criminal conduct intentionally directed toward the Plaintiff" and that Debtor's "criminal harm was different from that which would otherwise have resulted from an escrow's negligence." [ECF No. 92 at 13]. In its Motion for Summary Judgment, Defendant pointed to Plaintiff's subjective statements that, on a personal level, Plaintiff's representatives did not feel as though Debtor would defraud them. [ECF No. 92 at 9]. Defendant notes that its escrow officer and closer

---

other hand, the intentional sexual assault and brutal murder of two teenage girls who happen upon a gang initiation some distance in time and location from the illegal sale of alcohol is not the type of harm that would ordinarily result from such a sale." 990 S.W.2d at 755 (citations omitted).

15

"both testified that they had no information or knowledge that Mr. Pettit would steal Plaintiff's sale proceeds from Pettit Law" and that "Plaintiff's Managers all admitted that Mr. Pettit's post-closing theft from Pettit Law was unforeseeable."

Defendant's proffered evidence is insufficient to meet its burden. Defendant's proffered evidence of Plaintiff's representative's subjective feelings surrounding Debtor do not support the *Pena* test's requirement of objective foreseeability. Under *Pena*, Defendant must do more than point the finger at Debtor and state that Debtor committed a crime. Defendant has also not sufficiently explained how the harm inflicted by Debtor would be different in kind from that generally contemplated by the duty to educate its employees sufficiently on 1031 Exchanges. The Court agrees with Defendant that it is beyond dispute that Debtor's actions were clearly wrongful. But at this point, the Court disagrees with Defendant's contention that based on the summary judgment evidence provided, the harm caused by wire fraud is not of the type generally contemplated by the duty to educate employees on wire fraud protocol, specifically surrounding QIs without further expert testimony.

The Court welcomes Defendant's Motion to Reconsider, and upon further review, this Court revises its prior analysis of *Pena*, but the result is nonetheless the same. The Court finds that Defendant has failed to meet its burden at this stage in the litigation process and will proceed to trial.

THEREFORE, The Court ORDERS that the Motion to Reconsider is **DENIED**.

# # #